## BECK v. NATIONAL SURETY CORPORATION.

No. 12472.

United States Court of Appeals
Fifth Circuit.

Jan. 11, 1949.

Russell M. Baker, of Dallas, Tex., for appellant.

Lucian Touchstone and W. Richard Bernays, both of Dallas, Tex., for appellee.

Before HUTCHESON, SIBLEY, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

This suit was brought by Claudia L. Beck against the National Surety Corporation to set aside a decision of the Industrial Accident Board of the State of Texas, denying Plaintiff's claim for death benefits under the Texas Workmen's Compensation Laws, Vernon's Ann.Civ.St. art. 8306 et seq. It was alleged that plaintiff's deceased husband, Jesse Daniel Beck, sustained fatal injuries while working for the Dallas-Fort Worth Brewing Company, a subscriber under the Texas Workmen's Compensation Laws, by virtue of a policy of insurance issued by the defendant.

Defendant, in answer, denied that Plaintiff's husband sustained any accidental injuries during his employment which caused his death, but averred that his death resulted from a cerebral hemorrhage brought about solely by natural causes, for which no recovery could be had.

The case was submitted to a jury on the sole issue of whether plaintiff's husband sustained accidental injury in the course of his employment which caused his death. The jury returned a verdict for defendant.

Appellant alleges error on the part of the trial court in excluding as hearsay certain statements alleged to have been made by the deceased prior to his death. It is claimed that such statements constituted a part of the res gestae, and were therefore admissible as an exception to the rule excluding hearsay evidence.

The evidence reveals that deceased was fifty years of age, about 5 feet 4 or 6 inches in height, and weighed between 170 and 200 pounds at the time of his death. He was heavy-set and possessed a reddish complexion.

About 3:30 or 4:00 p. m. on October 15, 1947, deceased was working in the bottling room of his employer's beer plant. He entered the cold storage room in the cellar of the plant for the purpose of disconnecting the hose from the beer tanks and closing the valve. There was some evidence that deceased had difficulty in turning this valve, although other employees testified that it could be turned easily with one hand. In any event, he said nothing at the time about having strained or hurt himself, and did not appear to be injured as a result of any exertion. After remaining in the cellar of the plant with a fellow employee for three or four minutes, he went upstairs with this employee and prepared to quit for the day. They both joined a third employee in the dressing room of the plant where they changed into their street clothes, and the deceased drank his usual bottle of beer before leaving for home. It is without dispute that deceased still said nothing about having hurt himself in the plant, but appeared well and happy. He asked his foreman if he could get off from work for a proposed deer hunting trip several weeks away. He walked and talked in a normal manner.

About 4:45 p. m., approximately an hour after his alleged injury, deceased telephoned his sister-in-law in an effort to contact his wife. The sister-in-law testified that at this time he seemed to be nervous and upset; that he talked in an abnormal manner, and she gathered he was suffering much pain; that he was anxious to get in touch with his wife and for her to join him at home. Further testimony to the effect that deceased then told her he had strained himself while working in the beer plant that day was excluded as hearsay by the court.

Plaintiff testified that deceased appeared to be in good health when he left home for work on the day of his alleged injury; that she went to work and later did some shopping during the day; that afterwards she went to her sister's home and they attempted to telephone deceased about 6:00 p. m., but received no response; that she and her sister took a cab to her home and upon entering the house discovered her husband lying on the kitchen floor in a paralyzed, semi-conscious condition; that at first he did not recognize her, appeared to be suffering, and could not stand or talk. The court admitted further testimony to the effect that when deceased regained consciousness, he stated to her: "I strained myself on the job today and I have a terrible headache and a terrible pain in my left side and leg, and that caused me to fall." This testimony was later excluded by the trial court, on the ground that it was also inadmissible as hearsay.

There was medical testimony to the effect that deceased was examined at his home about 6:30 p. m. on the day of his alleged injury; that he was found to be completely paralyzed on his left side, with his mouth drawn; that his condition resulted from a cerebral hemorrhage, with hemiplegia or paralysis; that the cause of his cerebral hemorrhage was a rupture of blood vessels on the right side of the brain; that any unusual exertion could cause a sudden rise in blood pressure which might produce a cerebral hemorrhage. The doctor was further permitted to testify that at the time of his examination deceased told him he had felt peculiar while in the cellar of the beer plant, and could not swallow. This testimony was allowed to remain in evidence by the court.

We are of opinion the trial court properly excluded the testimony as to the alleged statements of deceased to his wife and sister-in-law, as this evidence was clearly hearsay, and not within the rule of res gestae, or any other exception to the hearsay rule. Lumberman's Reciprocal Assn. v. Adcock, Tex.Civ.App., 244 S.W. 645; Brashear v. Missouri Pac. Rwy. Co., Mo.App., 6 S.W.2d 650; Bonner v. Texas Co., 5 Cir., 89 F.2d 291; Aetna Life Ins. Co. v. Ryan, 2 Cir., 255 F. 483.

We are mindful that state workmen's compensation statutes and claims based thereon should be liberally construed, to the end that the individual workman and his family may benefit from the security

and protection afforded thereby, as a form of industrial accident insurance. Hartford Accident & Indemnity Co. v. Olivier, 5 Cir., 123 F.2d 709; see also, Stewart v. Travelers Protective Ass'n of America, 5 Cir., 81 F.2d 25; Walker v. Prudential Ins. Co. of America, 5 Cir., 127 F.2d 938. Nevertheless, it is well settled that whether alleged res gestae statements of a deceased are admissible must be determined by the facts and circumstances of each particular case, and the trial court is given wide discretion in this regard. Hartford Accident & Indemnity Co. v. Olivier, 5 Cir., 123 F.2d 709; Bonner v. Texas Co., 5 Cir., 89 F.2d 291; North American Accident Ins. Co. v. Wyatt, Tex.Civ.App., 160 S.W.2d 298.

█ There is absolutely no direct or substantial evidence in this case of any accidental injury sustained by the deceased while at work, except the statements alleged to have been made by him approximately two hours after his alleged injury, and at his home several miles away from the plant. Such statements were manifestly incompetent as original proof of the principal fact in issue, i. e., whether the injury alleged was sustained in the course of employment, where there was no other proof of that fact to lend them support. Fitzpatrick v. Woodmen of the World Life Ins. Society, 238 Mo.App. 385, 179 S.W.2d 753; Huth v. Huth, 10 Tex.Civ.App. 184, 30 S.W. 240; Aetna Life Ins. Co. v. Ryan, 2 Cir., 255 F. 483; 32 C.J.S., Evidence, § 408, p. 23, Sec. 405. So far as the testimony in this record is concerned, to assume that the deceased suffered an accidental injury while at work, is but to indulge in sheer speculation and conjecture. Although there is no dispute that he died as a result of the cerebral hemorrhage, it was shown that such hemorrhage may be caused by a variety of incidents, such as coughing, worry, anger, high blood pressure, and exertion, none of which factors were excluded here. Moreover, no evidence was introduced to show what deceased did between the time he left the plant, and the time he arrived home, nearly an hour later. Two of his fellow employees testified that when he left work there was nothing wrong with him. It is a reasonable inference that if he had hurt himself on the job the symptoms would have become apparent before he left the plant approximately one half hour later.[1] Under the circumstances, it is not reasonable to assume that the statements alleged to have been made by the deceased were admissible as res gestae, and they were therefore properly excluded. Aetna Life Ins. Co. v. Kern-Bauer, 10 Cir., 62 F.2d 477; McDowell v. Security Union Ins. Co., Tex.Civ.App., 10 S.W.2d 782, 785; North American Accident Ins. Co. v. Wyatt, Tex.Civ.App., 160 S.W.2d 298.

There appearing no reversible error in the record, the judgment is affirmed.

---

[1] "Q. Doctor, I will ask you this, if it is not a fact that if a man, such as Mr. Beck, exerts himself sufficiently to cause a hemorrhage of a blood vessel or artery, if it is not a fact that that would not come on immediately within a period of a minute or four or five minutes from the time the exertion took place?

"The Court: He has answered that several times.

"A. I have answered it, yes.

"The Court: Answer it once more.

"A. I say yes. * * *"